# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILLY DRIVER, JR., | No. 2:20-CV-0642-KJM-DMC-P |
| Plaintiff, | |
| v. | ORDER |
| KEITH GIBSON, et al., | |
| Defendants. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action under 42 U.S.C. § 1983. Before the Court is plaintiff's first amended complaint. ECF No. 30. The Court grants leave to amend to cure the defects discussed below.

## I. SCREENING REQUIREMENT

The Court must screen complaints from prisoners seeking relief against a governmental entity, officer, or employee. See 28 U.S.C. § 1915A(a). The court must identify any cognizable claims and dismiss any portion of the complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2).

A complaint must contain a short and plain statement of the claim that a plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). The complaint must provide "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

1  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause
2  of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S.
3  662, 678 (2009). To survive screening, a plaintiff's claims must be facially plausible, which
4  requires sufficient factual detail to allow the Court to reasonably infer that each named defendant
5  is liable for the misconduct alleged. Id. at 678–79; Moss v. U.S. Secret Service, 572 F.3d 962, 969
6  (9th Cir. 2009). Plaintiffs must demonstrate that each defendant personally participated in the
7  deprivation of the plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). If the
8  allegations "do not permit the court to infer more than the mere possibility of misconduct," the
9  complaint does not state a claim. Iqbal, 556 U.S. at 679. The complaint need not identify "a precise
10 legal theory." Kobold v. Good Samaritan Reg'l Med. Ctr., 832 F.3d 1024, 1038 (9th Cir. 2016).

11  The Court must construe a pro se litigant's complaint liberally. See Haines v.
12 Kerner, 404 U.S. 519, 520 (1972) (per curiam); Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir.
13 2012). However, "'a liberal interpretation of a civil rights complaint may not supply essential
14 elements of the claim that were not initially pled.'" Bruns v. Nat'l Credit Union Admin., 122 F.3d
15 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).
16 The Court may dismiss a pro se litigant's complaint "if it appears beyond doubt that the plaintiff
17 can prove no set of facts in support of his claim which would entitle him to relief." Hayes v. Idaho
18 Corr. Ctr., 849 F.3d 1204, 1208 (9th Cir. 2017).

19                          **II. PLAINTIFF'S ALLEGATIONS**

20  Plaintiff is a state prisoner. See ECF No. 30, pg. 1. He sues four defendants: (1) the
21 Office of Administrative Law (OAL); (2) Keith Gibson, an Administrative Law Judge (ALJ); (3)
22 William Hoover, an ALJ; and (4) C. Hahn, a prison employee at California Medical Facility (CMF).
23 Id. at 1–2, 14, 19. Plaintiff does not specify the specific right that he believes Defendants violated.
24 Id. at 3–5. Yet, he alleges that due process protections were required before he could be forcibly
25 medicated, but not a judicial hearing where judges are "deliberately indifferent." Id. at 4. Plaintiff
26 brings claims related to forced medication, safety, and failure to provide notice of a hearing. Id.
27 Moreover, Plaintiff cites 28 U.S.C. 1915(g) to indicate that he is in imminent danger. See id.
28 ///

1         Plaintiff brings his first claim against Judges Gibson and Hoover. Id. at 3. Gibson and Hoover, after administrative hearings, both allegedly issued orders authorizing prison personnel to involuntarily medicate Plaintiff with psychiatric medication. See id. at 3, 14–18. Plaintiff alleges he is in imminent danger of nonconsensual injections. Id. Plaintiff contends that the injections have caused dangerous side effects like gynecomastia (enlargement of breast tissue in men) and weight gain. Id at 3. Plaintiff apparently believes that the hearings at which Gibson and Hoover were themselves improper and based off of false testimony and reports, including reports that he is a danger to others and a report about an incident that never happened. Id.

        Continuing his discussion of forced medication, Plaintiff discusses Dr. Joshua Elliott, a prison physician who is not a named defendant. Id. at 4. Dr. Elliott allegedly falsified records and requests that Plaintiff be forcibly medicated. Id. Dr. Elliott assertedly perjured himself at the hearing on forced medication. Id. Plaintiff also alleges that he is not psychotic, ill, or a danger to others. Id. Rather, he is forced to take "toxic" medication based on a false report of a rules violation that never occurred. See id. The false reports and medication issues have, in Plaintiff's view, precipitated his incarceration well past his projected 2010 release date. See id. Plaintiff contends that a correctional office, F. Sevilla, wrote a false rules violation report. Id. That assertion may refer to the alleged false reports that purportedly led to his being forcibly medicated. See id.

        Lastly, Plaintiff alleges that Defendant C. Hahn, under penalty of perjury, falsely stated that Plaintiff received (and that she herself had served) notice of a forced medication hearing and documents regarding Plaintiff's newly assigned attorney. See id. at 5. As such, Plaintiff claims he was not adequately represented and that he is still required to take unconsented medication. Id. He labels his claim only as "failure to give notice." Id.

        Plaintiff also attaches various records to his complaint. See id. at 9–49. Notably, some of those records indicate that Plaintiff sought treatment for injury related to his forced medication. E.g., id. at 20. Other attachments include, for example, correspondence with various lawyers who declined to represent Plaintiff, medical records, and prisoner classification records. Id. at 9–49. Plaintiff also attaches past declarations discussing an alleged past assault, heart conditions, and his various allegations related to being involuntarily medicated. Id. at 21–26.

3

1    Plaintiff seeks an order directing discontinuation of involuntary medications, an award of several million dollars in damages, and an award of billions of dollars that he be allowed to donate. See id. at 6–7.

### III. DISCUSSION

The Court previously screened Plaintiff's original complaint. See ECF No. 28. The Court found that the original complaint was defective for at least two reason. Id. at 2. First, the Court noted that Judge Gibson is absolutely immune from suit. Id. Second, Plaintiff failed to link the other defendants named in the original complaint to any constitutional violation. Id.

Here, Plaintiff's amended complaint largely suffers from the same defects. The OAL is immune, as are Judge Gibson and Judge Hoover. Second, plaintiff has not alleged facts to link the remaining named Defendants to the claimed constitutional violations.

**A. Section 1983 Standards:**

Section 1983 provides a remedy for the violation of constitutional and federal statutory rights by a person acting under the authority of state law. 42 U.S.C. § 1983; see, e.g., Sampson v. County of Los Angeles, 974 F.3d 1012, 1018 (9th Cir. 2020); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). Section 1983, however, is not itself a source of substantive rights. Albright v. Oliver, 510 U.S. 266, 271 (1994); Sampson, 974 F.3d at 1018; Hall, 697 F.3d at 1068. Rather, § 1983 is a vehicle for vindicating rights "elsewhere conferred." Sampson, 974 F.3d at 1018.

To state a claim under § 1983, Plaintiff must allege (1) a deprivation of his constitutional rights or federally protected rights and (2) that the defendant's actions were taken under color of state law. Florer v. Congregation Pidyon Shevuyim, N.A., 639 F.3d 916, 921 (9th Cir. 2011); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006); see Sampson, 974 F.3d at 1018; Hall, 697 F.3d at 1068. Plaintiff, in other words, must plausibly allege that he suffered a violation of a federally protected right and that a person acting under color of state law *committed* that violation. See, e.g., Sampson, 974 F.3d at 1018; Long, 442 F.3d at 1185.

/ / /

/ / /

4

A person deprives another of a constitutional right within § 1983's meaning if they take an affirmative action, participates in another person's affirmative action, or fails to take an action that they are legally required to take and that causes the alleged deprivation. Preschooler II v. Clark Cty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007); see Lacey v. Maricopa Cty., 693 F.3d 896, 915 (9th Cir. 2012). Personal participation, however, is only one predicate for liability under § 1983. Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978); see Lacey, 693 F.3d at 915. "The requisite causal connection may [also] be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.3d at 743). This standard of causation resembles the typical "foreseeability" formulation of proximate cause. Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

In sum, there can be no § 1983 liability unless there is an adequate link or connection between a defendant's actions and the claimed deprivation. See, e.g., Arnold, 637 F.2d at 1355; Johnson, 588 F.2d at 743; see also Harper, 533 F.3d at 1026. A plaintiff must show that a defendant was the actionable cause of a claimed injury. Harper, 533 F.3d at 1026. Vague and conclusory allegations of official participation in a civil rights violation are unsatisfactory. Litmon v. Harris, 768 F.3d 1237, 1241 (9th Cir. 2014); Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

**B. 28 U.S.C. § 1915(g) Does not Provide a Cause of Action:**

Plaintiff's repeated citation of 28 U.S.C. 1915(g) does not help him. Section 1915 permits the Court to authorize prisoner plaintiffs to proceed in a case without prepayment of fees. 28 U.S.C. § 1915(a)(1). Section 1915(g) establishes the Prison Litigation Reform Act's (PLRA) three-strikes rule. Washington v. Los Angeles Cty. Sheriff's Dep't, 833 F.3d 1048, 1054 (9th Cir. 2016). The PLRA's three-strikes rule bars prisoners from proceeding in forma pauperis if they have "three strikes." Washington, 833 F.3d at 1054. Specifically, if on three or more previous occasions a prisoner brought a case that was dismissed on the basis that it was frivolous, malicious, or failed to state a claim on which relief could be granted, the prisoner cannot proceed in forma pauperis. Id.; see 28 U.S.C. § 1915(g).

1    The statute contains an express exception for prisoners "under imminent danger of
2 serious physical injury." 28 U.C.C. § 1915(g). Plaintiff's citations to § 1915(g) are obviously meant
3 to convey that he believes he is in imminent danger, but because a three-strikes issue is not before
4 the Court, the statute is irrelevant for this screening order.

5    **C.  Sovereign Immunity Shields the Office of Administrative Law:**

6    Plaintiff names the Office of Administrative Law as a defendant but does not
7 otherwise discuss it in his complaint. Even if he did, the OAL is immune from suit.

8    The Eleventh Amendment provides that the "[j]udicial power of the United States
9 shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one
10 of the United States by Citizens of another State." U.S. Const. amend. XI. Generally, the Eleventh
11 Amendment precludes federal courts from exercising jurisdiction over suits by individuals against
12 a State and its instrumentalities. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 97–100
13 (1984); Doe v. Regents of the Univ. of Cal., 891 F.3d 1147, 1153 (9th Cir. 2018); see Allen v.
14 Cooper, 140 S. Ct. 994, 1000 (2020); Maldonado v. Johnson, No. CV 19-5312-JVS (SP), 2021 WL
15 1152889, at *2 (C.D. Cal. Feb. 12, 2021).

16    There are a few exceptions to that rule. See, e.g., Atascadero State Hosp. v. Scanlon,
17 473 U.S. 234, 238 (1985); Holley v. Cal. Dep't Corrs., 599 F.3d 1108, 1111 (9th Cir. 2010);
18 Douglas v. Cal. Dep't of Youth Auth., 271 F.3d 812, 817–18 (9th Cir. 2001). States can consent to
19 suit and waive immunity. Sossamon v. Texas, 563 U.S. 277, 283–85 (2011); Pennhurst, 465 U.S.
20 at 99; Holley, 599 F.3d at 1111; Maldonado, 2021 WL 1152889, at *2. Congress may abrogate
21 States' immunity. See Coleman v. Court of Appeals of Md., 566 U.S. 30, 35 (2012); Seminole
22 Tribe of Fla. v. Florida, 517 U.S. 44, 55–56 (1996); Pennhurst, 465 U.S. at 99; Holley, 599 F.3d at
23 1111; Maldonado, 2021 WL 1152889, at *2. And parties may sue state officials for prospective
24 injunctive relief. See Seminole Tribe, 517 U.S. at 73; Doe, 891 F.3d at 1153; Krainski v. Nevada
25 ex rel. Bd. of Regents, 616 F.3d 963, 967–68 (9th Cir. 2010); Douglas, 271 F.3d at 817–18.

26    Section 1983 does not override States' sovereign immunity. E.g., Will v. Mich.
27 Dep't of State Police, 491 U.S. 58, 67, 71 (1989) ("We cannot conclude that § 1983 was intended
28 to disregard the well-established immunity of a State from being sued without its consent."). Too,

1   immunity extends to arms of the State, like state agencies. Crowe v. Oregon State Bar, 989 F.3d
2   714, 730 (9th Cir. 2021); Brown v. Cal. Dep't Corr., 554 F.3d 747, 752 (9th Cir. 2009); Durning v.
3   Citibank, N.A., 950 F.2d 1419, 1422–23 (9th Cir. 1991); see Pennhurst, 465 U.S. at 100.

4   California has consented to some suit in its own courts, such as under the California
5   Torts Claims Act. See, e.g., Maldonado, 2021 WL 1152889, at *2. But California has not waived
6   its immunity in federal court. E.g., Brown, 554 F.3d at 752; Dittman v. California, 191 F.3d 1020,
7   1025–26 (9th Cir. 1999); see also Atascadero, 473 U.S. at 241. Arms of the State of California thus
8   share in California's immunity absent waiver. See, e.g., Crowe, 989 F.3d at 730; Durning, 950 F.2d
9   at 1422–23; Frisby v. California, No. 1:20-cv-00228-DAD-GSA-PC, 2021 WL 2983144, at *3
10  (E.D. Cal. July 15, 2021); see also Brown, 554 F.3d at 752.

11  Expressly organized as part of California's state government under the Government
12  Operations Agency (GOA), the OAL is presumably a state agency for the purposes of sovereign
13  immunity. See Cal. Govt. Code § 11340.2(a); see also Crowe, 989 F.3d at 730–31 (stating that the
14  Eleventh Amendment bars suits against state agencies and identifying factors used to determine
15  whether an agency is an "instrumentality" of the state); Glenn v. CalSTRS, No. 16-cv-05512-SK,
16  2017 WL 5973513, at *4–6 (N.D. Cal. Feb. 21, 2017) (finding that a California state agency
17  organized under the GOA and that administered benefits for public school teachers was an
18  instrumentality of the state entitled to sovereign immunity). California's Legislature established the
19  OAL because, at the time, no central office in state government had the power to review
20  administrative regulations, and because it felt that the proliferation of regulations required the
21  involvement of the Executive Branch. Cal. Govt. Code. §11340(e)–(f).

22  Having considered the relevant factors (e.g., whether an entity performs central
23  government functions), the Court concludes that the OAL is an instrumentality of the State of
24  California and shielded under sovereign immunity. See Crowe, 989 F.3d at 730–31; Glenn, 2017
25  WL 5973513, at *4–6. To the extent that Plaintiff includes OAL as a defendant, sovereign immunity
26  bars those claims. See Pennhurst, 465 U.S. at 100; Crowe, 989 F.3d at 730–31; Durning, 950 F.2d
27  at 1422–23; Frisby, 2021 WL 2983144, at *3.
28  ///

**D. Gibson and Hoover are Shielded by Judicial Immunity:**

Judges are absolutely immune from liability for judicial acts taken within their official capacity—for their judicial acts. See Miller v. Davis, 521 F.3d 1142, 1145 (9th Cir. 2008); Schucker v. Rockwood, 846 F.2d 1202, 1204 (9th Cir. 1988); Ashelman v. Pope, 793 F.2d 1072, 1075 (9th Cir. 1986) Judges retain absolute immunity even when accused of acting corruptly, maliciously, or in error. See Stump v. Sparkman, 435 U.S. 349, 355–57 (1978); Ashelman, 793 F.2d at 1075. The absolute immunity afforded to judges disappears only when a judge acts in the *clear* absence of all jurisdiction or takes an action that is not judicial in nature. Stump, 435 U.S. 356–57; Sadoski v. Mosley, 435 F.3d 1076, 1079 (9th Cir. 2008); Meek v. County of Riverside, 183 F.3d 962, 965–66 (9th Cir. 1999); Schucker, 846 F.2d at 1204.

The Court, of course, recognizes that Judges Gibson and Hoover are administrative law judges, rather than officers of the judicial branch itself. But judges receive immunity not because of their position within the government but the substance of their responsibilities. Butz v. Economou, 438 U.S. 478, 511–12 (1978). Administrative law judges' duties are functionally comparable to those of judges as traditionally understood. Id. at 511–13. They thus receive immunity for actions taken in their judicial role. See id.; Hirsh v. Justices of Supreme Court of Cal., 67 F.3d 708, 715 (9th Cir. 1995); Powell v. Cmm'r of Soc. Sec. Admin., No. CV-21-00054-PHX-SMB, 2021 WL 410870, at *2 (D. Ariz. Feb. 8. 2021); Ungureanu v. A. Teichert & Son, No. CIV S–11–0316 LKK GGH PS, 2011 WL 4862425, at *11 (E.D. Cal. Oct. 13, 2011).

Plaintiff sues Judge Hoover and Judge Gibson over their orders permitting him to be forcibly medicated. Issuance of orders is clearly a judicial function. Judge Hoover and Judge Gibson are thus immune and Plaintiff's claims for damages against them are barred. Plaintiff does not allege any extra-judicial conduct on the Judges' part.

**E. Plaintiff Other Claims Fail to Satisfy Rule 8 and Establish Causal Links:**

Plaintiff does not sufficiently plead a violation of his constitutional or federal statutory rights in any of his other claims. Nor do Plaintiff's other allegations satisfy Rule 8.

Notwithstanding the inferentially-recognizable due process claims against Judge Gibson and Judge Hoover, Plaintiff's other claims are vague and conclusory at best. Although

Plaintiff broadly labels his claims with "failure to protect" or "failure to give notice," he never indicates what right he believes has been violated. See ECF No. 30 at 4–5. Nor does he adequately indicate *what* he is challenging. For example, Plaintiff is plainly unhappy with being involuntarily medicated. But while he takes issue with Dr. Elliott's writing of a false report supporting the forced treatment, Plaintiff does not name Dr. Elliott as a defendant. Id. at 4. Neither does Plaintiff clearly identify whether he discretely asserts Dr. Elliott's liability for writing the report or only challenges the involuntary medication (and the hearing) insofar as it *premised upon* a false report. See id. The same is true of the assertion that F. Sevilla wrote a fraudulent rules violation report. See id.

It is true, of course, that the Court must liberally construe pro se prisoner complaints. E.g., Litmon, 768 F.3d at 1241. But the liberality with which the Court must construe Plaintiff's complaint is not an invitation to disregard the rules that bind each litigant who brings a controversy before the federal judiciary. See Cafasso, 637 F.3d at 1058–59; McHenry, 84 F.3d at 1178–80. Plaintiff is not exempted from the requirement that his complaint contain a short and *plain* statement of his entitlement to relief. Fed. R. Civ. P. 8(a). Vague and conclusory allegations do not establish Dr. Elliott as a defendant. Indeed, because it is unclear what precisely Plaintiff takes issue with—the writing of the report or the premise of the involuntary medication order—Plaintiff does not establish an adequate causal connection between Dr. Elliott and any constitutional harm. Plaintiff must plausibly allege that he suffered a violation of federally safeguarded rights at the hands of a defendant acting under color of state law. Florer, 639 F.3d at 921; Sampson, 974 F.3d at 1018. But Plaintiff does not establish that Dr. Elliott is the actionable cause behind a (clearly pled) constitutional injury. The Court will not supply the essential elements of Plaintiff's claims.

Similarly, Plaintiff labels his claim against Hahn only as "failure to give notice." ECF No. 30 at 5. Though possibly implicating the Due Process Clause of the Fourteenth Amendment, Plaintiff again fails to provide enough information or clarity for the Court to make that leap. See id. Plaintiff contends that Hahn failed to deliver notice of Plaintiff's new attorney, and that she perjured herself when she said that she had delivered it. Id. Plaintiff then states that he went to his forced medication hearing without an attorney, which was why he must still take medication. Id. Though Plaintiff names Hahn as a defendant, he still does not allege what precise

right he believes has been violated. See id. The premise of liability is also again unclear. Plaintiff is vague about whether he directly challenges Hahn's alleged failure to deliver notice or, more broadly, that he was not represented at his hearing. Id. Plaintiff has not sufficiently linked Hahn to an alleged deprivation. That indefiniteness satisfies neither Rule 8 nor § 1983's pleading threshold. Plaintiff must clearly and plausibly allege that he suffered a deprivation of some right and that Hahn is responsible for that deprivation. See, e.g., Sampson, 974 F.3d at 1018; Long, 442 F.3d at 1185.

## IV. CONCLUSION

Because it is possible that some of the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend prior to dismissal of the entire action. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because some of the defects identified in this order cannot be cured by amendment, Plaintiff is not entitled to leave to amend as to such claims. Plaintiff, therefore, now has the following choices: (1) Plaintiff may file an amended complaint which does not allege the claims identified herein as incurable, in which case such claims will be deemed abandoned and the Court will address the remaining claims; or (2) Plaintiff may file an amended complaint which continues

to allege claims identified as incurable, in which case the Court will issue findings and recommendations that such claims be dismissed from this action, as well as such other orders and/or findings and recommendations as may be necessary to address the remaining claims.

Finally, Plaintiff is warned that failure to file an amended complaint within the time provided in this order may be grounds for dismissal of this action. See Ferdik, 963 F.2d at 1260-61; see also Local Rule 110. Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the Court's discretion, be dismissed with prejudice pursuant to Rule 41(b). See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's first amended complaint (ECF No. 30) is dismissed with leave to amend.

2. Plaintiff shall file a second amended complaint within 30 days of the date of service of this order.

Dated: August 30, 2021

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

11